PD-1591-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/26/2015 3:36:41 AM
Accepted 1/29/2015 1:30:49 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-1591-14

# *Robert Charles Thompson, Appellant,*
# *v.*
# *State of Texas, Appellee.*

### On Discretionary Review from No. 05-13-01620-CR
### Fifth Court of Appeals, Dallas

### On Appeal from Trial Court No. 219-80385-2012
### 219th District Court, Collin County

# Petition for Discretionary Review

**Michael Mowla**
**445 E. FM 1382 #3-718**
**Cedar Hill, Texas 75104**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

January 29, 2015

ABEL ACOSTA, CLERK

*ORAL ARGUMENT NOT REQUESTED*

## I. Identity of Parties, Counsel, and Judges

**Robert Charles Thompson**, **Appellant.**

**Michael Mowla, Attorney for Appellant on Appeal and Discretionary Review**, 445 E. FM 1382 #3-718, Cedar Hill, Texas 75104, phone 972-795-2401, fax 972-692-6636, email michael@mowlalaw.com.

**Don Guidry, Attorney for Appellant at Trial**, 137 Pittsburg Street Suite A, Dallas, Texas 75207, phone (972) 762-0883.

**Greg Willis, Collin County District Attorney, Attorney for State of Texas**, 2100 Bloomdale Suite 100, McKinney, Texas 75071, phone (972) 548-4323, fax (972) 548-4388.

**John Rolater, Collin County Assistant District Attorney, Attorney for State of Texas on Habeas Corpus and Appeal**, 2100 Bloomdale Suite 100, McKinney, Texas 75071, phone (972) 548-4323, fax (972) 548-4388, jrolater@co.collin.tx.us

**Brandon Wonnacott, Collin County Assistant District Attorney, Attorney for State of Texas at Trial**, 2100 Bloomdale Suite 100, McKinney, Texas 75071, phone (972) 548-4323, fax (972) 548-4388.

**Haley Hendrix, Collin County Assistant District Attorney, Attorney for State of Texas at Trial**, 2100 Bloomdale Suite 100, McKinney, Texas 75071, phone (972) 548-4323, fax (972) 548-4388.

**Scott Becker, Presiding Judge of the 219th Judicial District Court**, 2100 Bloomdale Suite 20132, McKinney, Texas 75071, phone (972) 548-4402, fax (972) 548-4697

**II.     Table of Contents**

I.      Identity of Parties, Counsel, and Judges ........................................................2

II.     Table of Contents ...............................................................................................3

III.    Table of Authorities ...........................................................................................4

IV.     Appendix Index ..................................................................................................6

V.      Statement Regarding Oral Argument .................................................................7

VI.     Statement of the Case and Procedural History ..................................................8

VII.    Grounds for Review ...........................................................................................10

VIII.   Argument ...........................................................................................................11

   **1.** Ground for Review One: The Court of Appeals erred when it concluded that the evidence is legally sufficient to prove that Appellant committed Assault on a Public Servant because the trial court was not free to disregard the State's own video and photos from the video, which clearly show that Appellant did not commit the offense. ...............................................................................11

      **i.**      Introduction .....................................................................................11

      **ii.**     Standards of legal sufficiency ..........................................................13

      **iii.**    The findings of fact and legal conclusions by the Court of Appeals do not comport with the evidence presented at trial ...............................................................................................15

      **iv.**    The trial court was not free to disregard the state's own video and photographs from the video, and common sense dictates that Appellant could not have kicked Bogacki when Bogacki claimed he was kicked ..................................19

      **v.**     In the alternative, should this Court find that Appellant is not guilty of Assault on a Public Servant but may have committed Resisting Arrest, this Court is empowered to reverse the *Judgment of Conviction by Court* and convict Appellant of Resisting Arrest. .................................................23

IX.     Conclusion and Prayer .......................................................................................25

X.      Certificate of Service .........................................................................................26

XI.     Certificate of Compliance with Tex. Rule App. Proc. 9.4 .............................26

## III. Table of Authorities

## Cases

*Agnew v. State*, 635 S.W.2d 167 (Tex. App. El Paso 1982, *no pet.*)........................24

*Bingham v. State*, 630 S.W.2d 718 (Tex. App. Houston [1st Dist.] 1982, *no pet.*) ........................................................................................25

*Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012).....................................23

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ....................................13

*Campbell v. State*, 128 S.W.3d 662 (Tex. App. Waco 2003)..................................25

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)................................21

*Castilla v. State*, 374 S.W.3d 537 (Tex. App. San Antonio 2012, *pet. ref.*)................................................................................................ 15, 17

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007).....................................13

*Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001).......................................14

*Delay v. State*, 443 S.W.3d 909 (Tex. Crim. App. 2014) .......................................14

*Gomer v. State*, No. 05-02-00771-CR, 2003 Tex. App. LEXIS 5795, 2003 WL 21525312 (Tex. App. Dallas July 8, 2003) (memorandum opinion) ......................................................................24

*Gumpert v. State*, 48 S.W.3d 450 (Tex. App. Texarkana 2001, *pet. ref.*)........................................................................................................24

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) .........................................13

*Illinois v. Gates*, 462 U.S. 213 (1983) ....................................................................18

*Jackson v. Virginia*, 443 U.S. 307 (1979).................................................................13

*Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992) .........................................19

*Lancon v. State*, 253 S.W.3d 699 (Tex. Crim. App. 2008)......................................22

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) .......................................14

*Luck v. State*, 588 S.W.2d 371 (Tex. Crim. App. 1976).........................................13

*N.J. v. T.L.O.*, 469 U.S. 325 (1985) ........................................................................19

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006) ......................................14

*Pyykola v. State*, 814 S.W.2d 462 (Tex. App. Houston [14th Dist.] 1991, *pet. ref.*)....................................................................................24

*Saxton v. State*, 804 S.W.2d 910 (Tex. Crim. App. 1991)........................................13

*Schrader v. State*, 753 S.W.2d 733 (Tex. App. Austin 1988, *pet. ref.*) ...................24

*Talavera v. State*, 626 S.W.2d 618 (Tex. App. El Paso 1982, *no pet.*) ...................24

*Temple v. State*, 390 S.W.3d 341 (Tex. Crim. App. 2013)......................................15

*Thompson v. State*, No. 05-13-01620-CR, 2014 Tex. App. LEXIS 12852 (Tex. App. Dallas, December 1, 2014) (memorandum opinion).................................................................................. 8, 9, 15

*Turro v. State*, 867 S.W.2d 43 (Tex. Crim. App. 1993) ..........................................15

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013)......................................14

*Wirth v. State*, 361 S.W.3d 694 (Tex. Crim. App. 2012) ........................................16

**Statutes**

Tex. Pen. Code § 22.01 (2011) ...............................................................................9

Tex. Pen. Code § 38.03 (2011) ..................................................................... 23, 24

**Rules**

Tex. Rule App. Proc. 43.2 (2015).........................................................................23

Tex. Rule App. Proc. 66.3 (2015).........................................................................23

Tex. Rule App. Proc. 68.11 (2015).......................................................................26

Tex. Rule App. Proc. 68.4 (2015)................................................................... 7, 10

Tex. Rule App. Proc. 9.4 (2015)...........................................................................26

Tex. Rule Evid. 803 (2011)...................................................................................21

**IV. Appendix Index**

**Appendix 1:** Judgment and Opinion of the Court of Appeals in *Thompson v. State*, No. 05-13-01620-CR, 2014 Tex. App. LEXIS 12852 (Tex. App. Dallas, December 1, 2014) (memorandum opinion)

## V. Statement Regarding Oral Argument

Appellant does not request oral argument.  *See* Tex. Rule App. Proc. 68.4(c) (2015).  Appellant believes that the facts and legal arguments are adequately presented in this petition.  However, should this Court determine that its decisional process will be significantly aided by oral argument, Appellant will be honored to present oral argument.

**To The Honorable Judges of the Court of Criminal Appeals:**

Appellant Robert Charles Thompson respectfully submits this petition for discretionary review:

## VI. Statement of the Case and Procedural History

This petition for discretionary review requests that this Court review the judgment and opinion of the Fifth Court of Appeals in *Thompson v. State*, No. 05-13-01620-CR, 2014 Tex. App. LEXIS 12852 (Tex. App. Dallas, December 1, 2014) (memorandum opinion). (*See* Appendix 1). Appellant will ask this Court to decide whether the Court of Appeals erred when it concluded that the evidence is legally sufficient to prove that Appellant committed Assault on a Public Servant even though the trial court disregarded the State's own video and photos from the video, which clearly show that Appellant did not commit the offense.

On February 9, 2012, the State alleged in its Indictment that on or about September 3, 2011, in Collin County, Texas, by kicking Plano police officer Bogacki in the leg, Appellant intentionally, knowingly, and recklessly caused bodily injury to Bogacki and thus committed Assault on a Public Servant under Texas Penal Code § 22.01(a) and (b)(1) (2011). *See* Tex. Pen. Code § 22.01(a) & (b)(1) (2011); (CR, 13).

To the charge in the Indictment, Appellant pleaded "not guilty." (RR2, 7; CR, 56). Appellant waived his right to a jury trial and opted to have his case tried by the trial court. (RR2, 6; CR, 52).

On October 30, 2013, after a trial before the court, the trial court found Appellant guilty of Assault on a Public Servant. (RR2, 99; CR, 56-61).[1] Appellant was sentenced to 10 years in prison, but the trial court probated the sentence for four years. (CR, 56-61). Appellant was fined $5,000.00 and ordered to pay costs of court. (CR, 56).

Appellant appealed the *Judgment of Conviction by Court* to the Fifth Court of Appeals. On December 1, 2014, the Fifth Court of Appeals affirmed the *Judgment of Conviction by Court. Thompson v. State*, No. 05-13-01620-CR. This petition for discretionary review follows.

---

[1] The Record on Appeal consists of the Clerk's Record, which is one volume, and the Reporter's Record, which is three volumes. The Clerk's Record is cited as "CR" or followed by the page number, and the Reporter's Record is cited as "RR" followed by the volume number and page number.

## VII. Grounds for Review

**<u>Ground for Review One</u>:** The Court of Appeals erred when it concluded that the evidence is legally sufficient to prove that Appellant committed Assault on a Public Servant because the trial court was not free to disregard the State's own video and photos from the video, which clearly show that Appellant did not commit the offense.

The relevant pages of the record are: Clerk's Record pages 13, 52, and 56-61, and the following pages of the Reporter's Record: RR2, pages 67-93; and RR3, SX-1; DX-1-2. *See* Tex. Rule App. Proc. 68.4(f) (2015)

**VIII. Argument**

1. **Ground for Review One: The Court of Appeals erred when it concluded that the evidence is legally sufficient to prove that Appellant committed Assault on a Public Servant because the trial court was not free to disregard the State's own video and photos from the video, which clearly show that Appellant did not commit the offense.**

   **i. Introduction**

This case boils down to a simple fact: the State's own video and photos from those videos are conclusive in proving that Appellant never kicked Poligala. When this Court sets aside all witness testimony and focuses only on the State's video and photos from the video that were taken from the police vehicle of officer Poligala, this conclusion is clear. (RR2, 26). The video was a continuous video. (RR2, 26). Poligala claimed that the in-car video and audio were not activated prior to the kick. (RR2, 49). When Poligala claimed to see Appellant kick Bogacki, Poligala claims he "immediately reached down" and "hit on" a button "knowing that it would go back (10 seconds) and grab that video" (of the alleged kick). (RR2, 49). Poligala then acknowledged that the video is continuously recording, but that the 10-second recapture deals with the recapture of the audio. (RR2, 51-54).

Thus, the State's video is clear, clean, and cannot be disputed. Using the State's video and photographs from the video, Jim Appleton, a video and audio expert with 27 years of experience who often testifies for the State, made it clear to

the trial court that the video recorder (Integrian Digital Patroller) is capable of rewinding up to a minute to recapture audio (and not merely 10 seconds as Poligala claimed). (RR2, 67-70). Further, the video showed, and Appleton concluded, that the audio began at the instant Bogacki stated to Appellant that "you kicked me." (RR2, 71-72). Further, the video showed that Appellant's knee never extended. (RR2, 72). The video makes it clear that there is "no body language that is associated" with a kick, meaning that there was "no moving back of (Appellant's) body." (RR2, 72). The frame of the video at the instant the kick supposedly occurred clearly shows that Appellant's knee is bent in an L-shape, so no kick could have taken place when Bogacki claims it occurred. (RR2, 73-74, 80-82).

Had Appellant actually kicked or even tried to kick Bogacki, Appellant's back would have moved back at least in the slightest, and this never occurred in the videos or the photos immediately before, during, and after the alleged kick. (RR2, 81-82). No part of the State's video or photos show that Appellant got "a full extension of his leg" so that "his foot made contact with Bogacki's leg just above the knee." None of the videos or photos show a "thrust of Appellant's hip" at the same time that Appellant's leg allegedly came out and made contact with Bogacki's knee. In fact, **at the instant that Bogacki claimed that Appellant kicked him, Appellant was leaning forward**, which would have made a kick physically impossible. (RR2, 93; RR3, SX-1; DX-1-2). This evidence was

ignored by the Court of Appeals, and so it erred by affirming Appellant's conviction.

### ii. Standards of legal sufficiency

When a reviewing court considers legal sufficiency, it reviews all the evidence in the light most favorable to the verdict of the trier of fact to determine whether any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty, or whether the same rational trier of fact found that the State disproved a defense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Saxton v. State*, 804 S.W.2d 910, 912 (Tex. Crim. App. 1991); and *Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim. App. 1976). Under *Brooks*, a reviewing court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brooks*, *Id*. at 916; *citing Jackson v. Virginia*, *Id*. at 319; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). And when conducting a legal sufficiency review, a reviewing court considers all evidence in the record of the trial, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Conner v. State*, 67 S.W.3d 192, 197

(Tex. Crim. App. 2001); *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

When considering the evidence presented, a reviewing court may also determine whether the trier of fact "got it wrong" because the verdict the trier of fact renders is irrational. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (a legal sufficiency review "is restricted to guarding against the rare occurrence when a factfinder does not act rationally."). As this Court noted recently,

> "...sometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law."

*Delay v. State*, 443 S.W.3d 909, 912-913 (Tex. Crim. App. 2014). *Delay* specifically deals with a situation where the acts that the State alleged did not constitute a criminal offense under the totality of circumstances, *Id*. at 913, but the concept is the same: when conducting a legal sufficiency review, a reviewing court may consider whether the evidence support a conviction as a matter of law. A reviewing court must ask whether there is some evidence that a rational trier of fact cannot disregard or disbelieve.

In *Brooks*, this Court provides a hypothetical in which although the properly authenticated surveillance videotape of the event clearly shows that "B" committed the robbery, a witness identifies "A" as the robber. *Brooks*, *Id*. at 906-907. Though

it is within the trier of fact's prerogative to believe the witness and disregard the video, based on all of the evidence, the trier of fact's finding that "A" committed the robbery is not a rational finding. *Id.*

As the following arguments will show, the same "video-trumps-testimony" logic discussed in *Brooks* should be applied in cases such as the one before this Court. Further, in the case before this Court, not only did the trial court and Court of Appeals have a State video that **absolutely rebuts** the testimony of the two officers, but both courts had enlarged photographs from the same State video that clearly show that Appellant did not kick Bogacki. Yet, both courts disregarded this evidence.

### iii. The findings of fact and legal conclusions by the Court of Appeals do not comport with the evidence presented at trial

In its opinion, the Court of Appeals dismisses the State's video evidence as merely a "different version of the events." *Thompson*, *Id*. at *8. In support, the Court of Appeals cites *Temple v. State*, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013), which quotes *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993), and *Castilla v. State*, 374 S.W.3d 537, 540 (Tex. App. San Antonio 2012, *pet. ref.*).

The facts and legal reasoning in *Temple* have no relation with the facts of the case before this Court. In *Temple*, the jury heard conflicting circumstantial evidence regarding the defendant's guilt and resolved the conflicts against the

defendant. *Temple*, 390 S.W.3d at 363. As this Court found, "[T]he jury inferred from the circumstantial evidence that Appellant was guilty of the murder of his wife." *Id*. Further, this Court also found that the jury's determination was not "so outrageous that no rational trier of fact could agree." *Id*., *citing Wirth v. State*, 361 S.W.3d 694, 698 (Tex. Crim. App. 2012). Unlike the case before this Court, in *Temple*, evidence was presented from numerous sources, and there was not one piece of evidence in *Temple* such as a State's video and photos from a State video as in Appellant's case that would have made the findings of the trier of fact "outrageous." In fact, in *Temple*, there was no video that rebuts the single piece of evidence supporting the conviction.

And, the reliance by the Court of Appeals on *Castilla* is misplaced. The Court of Appeals cites *Castilla* as a case that "distinguish(es) Brooks hypothetical where video evidence did not 'conclusively disprove' but 'merely called into question' eyewitness's credibility." However, the facts of *Castilla* are not similar to the facts of the case before this Court, and in fact, the "video" in *Castilla* does not rebut the officer's testimony at all.

In *Castilla*, an officer pursued a vehicle that was speeding. *Castilla*, 374 S.W.3d at 538. Instead of pulling over, the driver of the vehicle accelerated. *Id*. Three other police cars joined the chase, which lasted about ten minutes and involved speeds of over eighty miles per hour. *Id*. At one point, the vehicle made a

U-turn, almost striking one police vehicle. *Id*. That police vehicle was equipped with a dashboard-mounted video camera that recorded the near-collision. *Id*.

At the beginning of the chase, the vehicle contained four occupants (two males and two females). *Id*. Twice during the chase, the vehicle stopped to allow the females to exit. *Id*. A handgun and a Texas identification card fell out of the vehicle when one of the females exited. *Id*. The two males resumed their flight in the vehicle. *Id*. The vehicle stopped, the two males exited the vehicle, jumped a nearby fence, and escaped. *Id*. at 539.

The identification card that fell out of the vehicle belonged to the defendant. *Id*. The vehicle also contained the defendant's tax return and a financial statement from an account registered in the defendant's name. *Id*. The vehicle itself was registered to the defendant's mother. *Id*.

At trial, based on his "brief view of the driver" when the vehicle almost hit his patrol car, one of the officers testified that he was able to positively identify the defendant as the driver of the vehicle. *Id*. The jury found the defendant guilty of evading arrest. *Id*.

The dashboard-camera's video recording did not clearly show that someone other than the defendant was driving the vehicle *Id*. at 540. In fact, the parties conceded on appeal that the video is of poor quality and does not clearly identify the driver. *Id*. at 540. In *Castilla*, the court of appeals rejected the defendant's

*Brooks*-video hypothetical argument because the video did not clearly identify the driver, and not merely because the video called into question the officer's testimony. In fact, an unclear video that is inconclusive as to identity does not call into question a person's testimony at all.

Finally, the statement by the Court of Appeals that Appleton's expertise "did not include any scientific knowledge of human movement" (*Id*. at *9) does not take into consideration that some things in life must be considered using ***common sense***. The phrase "common sense" has been used countless times by judges of reviewing courts, and as Appellant will show below, common sense will show that as the video and photographs conclusively proved that he could not have physically kicked Bogacki when Bogacki claimed he was kicked. *See, e.g*., *Illinois v. Gates*, 462 U.S. 213, 230 (1983) ("Courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a **commonsense**, manner) (emphasis added); *Miranda v. Ariz.*, 384 U.S. 436, 533-534 (1966) (White, J. dissenting) (**Common sense** rejects the notion that if the police ask a suspect a single question such as "Do you have anything to say?" or "Did you kill your wife?" his response, if there is one, has somehow been compelled even if the suspect has been clearly warned of his right to remain silent) (emphasis added); *N.J. v. T.L.O*., 469 U.S. 325, 346 (1985) ("**common-sense** [conclusion] about human behavior upon which "practical people" -- including government officials --

are entitled to rely.) (emphasis added); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (To be considered reliable, "as a matter of **common sense**, evidence derived from a scientific theory must satisfy three criteria in any particular case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question.") (emphasis added).

### iv. The trial court was not free to disregard the state's own video and photographs from the video, and common sense dictates that Appellant could not have kicked Bogacki when Bogacki claimed he was kicked

Unlike the facts in *Castilla*, the State's own video clearly shows that Appellant never kicked Bogacki. This conclusion is supported by the photographic stills from the State's video. In its opening argument, the State conceded that from the angle that the police camera was positioned, the trial court is "unable to see a real forceful kick." (RR2, 8-9). However, not only was there no "real forceful kick," there was no kick at all. The State relied upon the argument that "two sworn police officers" who testify "under oath" somehow cannot lie, and the Court of Appeals accepted this argument. Despite the clear video and photographic evidence showing that Appellant never kicked Bogacki, the trial court and Court of Appeals accepted the testimony of Bogacki and Poligala over this clear video and photographic evidence. The trial court and Court of Appeals did so despite the

following: (1) although he testified with remarkable clarity regarding one single incident that occurred over two years prior to trial (alleged incident took place on September 3, 2011 and trial took place October 2013), Bogacki did not recall telling Appellant, "hey, you kicked me" (RR2, 37); (2) Bogacki did not recall Appellant stating to him, "kick you? What do you mean?" (RR2, 38); (3) Bogacki testified that Poligala witnessed the alleged kick while standing near the passenger side of the *front* door (RR2, 26), yet Poligala stated that when he allegedly saw Appellant kick Bogacki, Appellant was in the back of the vehicle facing outward, Bogacki was in front of Appellant, and Poligala was standing to Bogacki's "immediate left" towards the rear of the vehicle. (RR2, 48, 58). As a result, Poligala could not have "observed (Appellant) get a full extension of his leg and his foot made contact with Bogacki's leg just above the knee" (RR2, 61) as Poligala claimed.

Thus, over the clear evidence of the State's own video and photographs from that video, the trial court and Court of Appeals accepted the testimony of two officers whose versions of the events were materially different from each other. This Court should not let this result stand.

Further, the State's video and photographs from the video represent the best evidence of Bogacki's then-present sense impression and then-existing mental and emotional condition. *See* Tex. Rule Evid. 803(1) & (3) (2011). The audio started

at the very moment Bogacki stated to Appellant that "you kicked me," (RR2, 71-72; RR3, SX-1; DX-1-2), but at that instant, Appellant's knee never extended. (RR2, 72; RR3, SX-1; DX-1-2). There was "no body language" that could be associated with a kick. (RR2, 72; RR3, SX-1; DX-1-2). There was "no moving back of (Appellant's) body." (RR2, 72; RR3, SX-1; DX-1-2). There was no "thrust of Appellant's hip" at the same time that Appellant's leg allegedly came out and made contact with Bogacki's knee. And as stated above, **at the instant that Bogacki claimed that Appellant kicked him, Appellant was leaning forward**, which would have made a kick physically impossible. (RR2, 93; RR3, SX-1; DX-1-2). Thus, it is clear that Bogacki exclamation of "you kicked me" was contrived. Appellant again notes that at trial, Bogacki did not recall telling Appellant, "hey, you kicked me," (RR2, 37), most likely because Appellant never kicked Bogacki. This is a **common-sense** conclusion that does not require "scientific knowledge of human movement" as the Court of Appeals felt was missing in this case.

And although the following case does not involve legal sufficiency, in *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000), in describing evidence presented in a videotape versus the testimony of an officer, this Court noted,

> "Second, the nature of the evidence presented in the videotape **does not pivot 'on an evaluation of credibility and demeanor.**' Rather,

**the videotape presents indisputable visual evidence contradicting essential portions of (the officer's testimony).** In these narrow circumstances, **we cannot blind ourselves to the videotape evidence** simply because (the officer's) testimony may, by itself, be read to support the Court of Appeals' holding."

(emphasis added). The language used by this Court in *Carmouche* follows this Court's conclusions in both *Brooks* and in *Lancon*, in which with regards to contradictory witness testimony, even when contradicting evidence is compelling, the court must give deference to the fact-finder's decision, **unless the record clearly reveals an appropriate contrary result**. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (emphasis added).

Appellant's case is one where the trier of fact simply "got it wrong," and the record "clearly reveals an "appropriate contrary result" to the trial court's finding that Appellant kicked Bogacki. This Court should thus find that the "video-trumps-testimony" logic discussed in *Brooks* should be applied in Appellant's case, as not only did the State's own video show that Appellant did not kick Bogacki, but enhanced photographs from the video conclusively show this as well.

As a result, this Court should grant discretionary review because not only has the Court of Appeals decided an important question of state and federal law that has not been, but should be, settled by this Court, but also because the Court of Appeals decided an important question of federal law in a way that conflicts with the applicable decisions of this Court and the Supreme Court of the United States.

*See* Tex. Rule App. Proc. 66.3(b) and (c) (2015). And in doing so, this Court should reverse the *Judgment of Conviction by Court* and enter a judgment of acquittal.

### v. In the alternative, should this Court find that Appellant is not guilty of Assault on a Public Servant but may have committed Resisting Arrest, this Court is empowered to reverse the *Judgment of Conviction by Court* and convict Appellant of Resisting Arrest.

As Appellant argued in his Brief before the Court of Appeals, a reviewing court is empowered to reverse the *Judgment of Conviction by Court* for Assault on a Public Servant and convict Appellant for Resisting Arrest under Texas Penal Code § 38.03. *See* Tex. Pen. Code § 38.03(a) (2011); *see Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012) (A reviewing court may reform a judgment of conviction and convict an appellant of a lesser-included offense even if: (1) the jury was not instructed on the lesser-included offense, and (2) neither of the parties asked for such an instruction.); Tex. Rule App. Proc. 43.2(c) (2015).

Although Appellant did not kick Bogacki, Bogacki testified that when he attempted to place Appellant into the police vehicle, Appellant refused, demanded to speak to a supervisor, and then was "pushing and leaning towards" Bogacki while Bogacki was "pushing back." (RR2, 23-24, 34, 47-48). Thus, Appellant may have been guilty of Resisting Arrest. A person commits Resisting Arrest if he intentionally prevents or obstructs a person he knows is a peace officer, or a person

acting in a peace officer's presence and at the peace officer's direction, from effecting an arrest, search, or transportation of him or her or another by using force against the peace officer or another. Tex. Pen. Code § 38.03(a) (2011); *see Agnew v. State*, 635 S.W.2d 167, 168 (Tex. App. El Paso 1982, *no pet.*); *Pyykola v. State*, 814 S.W.2d 462, 464 (Tex. App. Houston [14th Dist.] 1991, *pet. ref.*); *Schrader v. State*, 753 S.W.2d 733, 735 (Tex. App. Austin 1988, *pet. ref.*); *Talavera v. State*, 626 S.W.2d 618, 619 (Tex. App. El Paso 1982, *no pet.*) (Resisting Arrest may be charged where the defendant offers no resistance when told that he is under arrest, but then resists when the officer attempts to take the defendant into custody).

In addition, Resisting Arrest is a lesser-included offense of Assault on a Public Servant because the element of force of Resisting Arrest makes it similar to both Assault on a Public Servant and Aggravated Assault on a Public Servant. *See Gumpert v. State*, 48 S.W.3d 450, 453 (Tex. App. Texarkana 2001, *pet. ref.*); *Gomer v. State*, No. 05-02-00771-CR, 2003 Tex. App. LEXIS 5795, 2003 WL 21525312 (Tex. App. Dallas July 8, 2003) (memorandum opinion), *Id.* at *6 (resisting arrest can be lesser-included offense of assault of a public servant); *Bingham v. State*, 630 S.W.2d 718, 719 (Tex. App. Houston [1st Dist.] 1982, *no pet.*); *Campbell v. State*, 128 S.W.3d 662, 669-670 (Tex. App. Waco 2003).

## IX. Conclusion and Prayer

For the reasons stated in this petition, Appellant respectfully prays that this Court grant discretionary review, reverse the *Judgment of Conviction by Court*, and enter a judgment of acquittal. In the alternative, Appellant prays that this Court reverse the judgment of conviction for Assault on a Public Servant, convict him of Resisting Arrest, and remand the case back to the trial court for a new sentencing hearing before a jury for misdemeanor Resisting Arrest.

Respectfully submitted,

Michael Mowla
445 E. FM 1382 #3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
Email: michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

**/s/ Michael Mowla**
By: Michael Mowla

## X.  Certificate of Service

This certifies that on January 26, 2015, a true and correct copy of this document was served on the District Attorney's Office, Collin County, Appellate Division, John Rolater by email to daappeals@collincountytx.gov, and on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov, and John Messinger, Assistant State Prosecuting Attorney, by email to john.messinger@spa.state.tx.us.  *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015)

**/s/ Michael Mowla**
By: Michael Mowla


## XI. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 4,500 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 3,649 words in the document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font.  *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

# APPENDIX 1

No *Shepard's* Signal™

# *Thompson v. State*

Court of Appeals of Texas, Fifth District, Dallas

December 1, 2014, Opinion Filed

No. *05-13-01620-CR*

**Reporter**

2014 Tex. App. LEXIS 12852

ROBERT CHARLES THOMPSON, Appellant v. THE STATE OF TEXAS, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On Appeal from the 219th Judicial District Court, Collin County, Texas. Trial Court Cause No. 219-80385-2012.

## Core Terms

video, kick, public servant, trial court, police officer, officers', witnessed, assault, argues, seat

## Case Summary

### Overview

HOLDINGS: [1]-There was legally sufficient evidence to support each element of the offense of assault on a public servant, *Tex. Penal Code Ann. §§ 22.01(a)(1)*, *22.01(b)(1)*, because the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony and it rejected defendant's interpretation of the video and pictures.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Criminal Law & Procedure > ... > Standards of Review > Deferential Review > Credibility & Demeanor Determinations

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Criminal Law & Procedure > ... > Standards of Review > Deferential Review > Credibility & Demeanor Determinations

*HN1* In reviewing the legal sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable

inferences from that evidence, a rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. Direct and circumstantial evidence are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. Because the fact finder is the sole judge of the witnesses' credibility and the weight to be given the evidence, the reviewing court defers to the trier of fact's resolution of any conflicts in testimony, weight of the evidence, and inferences drawn.

> Criminal Law & Procedure > ... > Assault & Battery > Aggravated Offenses > Elements
>
> Criminal Law & Procedure > Criminal Offenses > Obstruction of Administration of Justice > Elements
>
> Criminal Law & Procedure > ... > Assault & Battery > Aggravated Offenses > Elements
>
> Criminal Law & Procedure > Criminal Offenses > Obstruction of Administration of Justice > Elements

*HN2* A person commits assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, *Tex. Pen. Code Ann. §§ 22.01(a)(1)*; 22.01(b)(1) (Supp. 2014).

> Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence
>
> Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

*HN3* The evidence is not rendered insufficient simply because appellant presented a different version of the events.

**Counsel:** For Appellants: Michael Mowla, Cedar Hill, TX; Donald Guidry, Dallas, TX.

For Appellees: Haley Hendrix, Greg Willis, Daniel Lewis, John Rolater, Brandon Wonnacott, McKinney, TX.

**Judges:** Before Justices O'Neill, Fillmore, and Chief Justice Thomas, Retired.[1] Opinion by Justice O'Neill.

**Opinion by:** MICHAEL J. O'NEILL

# Opinion

**MEMORANDUM OPINION**

Opinion by Justice O'Neill

Appellant Robert Charles Thompson appeals his conviction for the offense of assault on a public servant. He was found guilty after a bench trial and received a sentence of ten years' confinement probated for four years. In two issues, appellant contends there was legally insufficient evidence to support his conviction. We affirm the trial court's judgment. Because the issues are settled in law, we issue this memorandum opinion. *Tex. R. App. P. 47.4*.

---

[1] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

## BACKGROUND

On September 3, 2011, the manager of a Collin County bar contacted police regarding problems with a patron. In response, Officer Michael Bogacki, on foot patrol, entered the bar and observed appellant. Bogacki is employed by the City of Plano as a police officer. Bogacki observed that appellant had watery eyes and that appellant's breath [*2] smelled of alcohol. Bouncers at the bar told Bogacki that appellant had been asked to leave, but refused, and was argumentative. One of the bouncers also observed what he believed to be use of cocaine by appellant and his girlfriend. Bogacki believed that appellant might be committing the offense of public intoxication. When appellant exited the bar to obtain his car from the valet area, Bogacki detained appellant to investigate. Appellant refused to give Bogacki his driver's license when Bogacki requested it, and walked away. Another police officer instructed appellant to return to Bogacki. Appellant was argumentative and demanded that Bogacki perform a field sobriety test. Bogacki did so. He administered the horizontal gaze nystagmus test on appellant, which showed six out of six clues of intoxication. Appellant refused to take the walk and turn test, and walked away toward the valet. Bogacki then placed appellant under arrest for public intoxication.

Bogacki then attempted to place appellant in the back seat of a squad car. He opened the rear side passenger door. Appellant refused to get into the car. Bogacki pushed appellant into the car, and appellant continued to resist. Appellant [*3] refused to pull his legs into the car. When Bogacki attempted to fasten appellant's seat belt, appellant kicked Bogacki in the knee. Bogacki testified that the kick was painful, and his knee "slightly hyperextended" or bent backwards. Bogacki then grabbed appellant's foot "and muscled it into the car and shut the door."

Another City of Plano police officer, Chris Poligala, witnessed the kick. He was standing on Bogacki's left, toward the rear of the vehicle. When he witnessed the kick, Poligala pressed the button on the car's video recorder so that the previous ten seconds would be captured. He explained that only the video, not the audio, would be activated. The audio would begin to record ten seconds later. The video was admitted into evidence at trial. The camera was located on the driver's side of the car. Appellant was seated facing outward on the passenger side of the car. Therefore only appellant's back is visible on the recording.

James Appleton testified as a witness for appellant. Appleton owns a video production company and testified that he is a video and audio expert. He often works for federal and state law enforcement performing video and audio surveillance analysis. Appleton [*4] testified that he "had some real problems" with the video of appellant taken from the squad car. First, it would have been possible to obtain a "full screen view" of appellant in the back seat of the car. Second, there was no audio. Third, the video should have begun earlier, when Bogacki first attempted to seat appellant in the car. Appleton testified that most systems would allow several minutes or at least a full minute or to be captured when the button was pressed, rather than ten seconds. Appleton also testified that he enhanced the video, and stated that in his opinion appellant did not kick Bogacki: "There is no body language that is associated with that kick. There was no moving back of the body. There was no extension of the knee." The enhanced video "clearly showed" that appellant's leg was bent, not extended, at the time of the alleged kick. Appleton also testified that in his opinion the video offered by the State had been altered because it was "completely inconceivable" that the ten-second recording would begin exactly when Bogacki said "You kicked me" to appellant.

The video identified by Poligala was admitted into evidence as State's Exhibit 1. The enhanced video identified [*5] by Appleton was admitted into evidence as Defense Exhibit 2. Both videos were played for the trial court at the trial and are included in the appellate record.

**STANDARD OF REVIEW**

*HN1* In reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences from that evidence, a rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*; *Lucio v. State, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011)*. Direct and circumstantial evidence are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)*. Because the fact finder is the sole judge of the witnesses' credibility and the weight to be given the evidence, the reviewing court defers to the trier of fact's resolution of any conflicts in testimony, weight of the evidence, and inferences drawn. *See Brooks v. State, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)*.

**APPLICABLE LAW**

*HN2* A person commits assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *See TEX. PEN. CODE ANN. §§ 22.01(a)(1)*; *22.01(b)(1)* (West Supp. 2014). Appellant does not [*6] challenge the State's allegations that Bogacki was a public servant lawfully discharging an official duty. His only contention is that the evidence is insufficient to show that he caused bodily injury to Bogacki. **APPLICATION OF LAW TO FACTS**

In his first issue, appellant argues that the evidence is insufficient to support the trial court's finding of guilty because "the State's photos and videos clearly show that Appellant did not commit the offense." He argues that the trier of fact chose to believe the inconsistent testimony of two police officers "over the irrefutable video and photographic evidence." He contends the evidence must be sufficient for a "rational" trier of fact to find all of the elements of the offense beyond a reasonable doubt, and it was not rational for the trial court to believe the police officers when their testimony was inconsistent and was refuted by the video evidence.

Appellant argues the police officers' testimony is inconsistent about where Poligala was standing. Poligala testified he was standing toward the rear of the vehicle, to Bogacki's left, while Bogacki testified Poligala was near the front door, which would have been to Bogacki's right. Appellant [*7] argues this is just one of the "material inconsistencies" in the officers' testimony. He urges, however, that the "best evidence of what occurred that evening" is in the State's own video, and pictures taken from the video. He contends that neither the video nor the pictures show any "body language that is associated with a kick." He argues the video shows his leg was bent, not extended, and he was leaning forward, not back, when the kick allegedly occurred. He compares the evidence to the hypothetical convenience store robbery described in *Brooks* in which a witness identifies person A as the perpetrator, but surveillance video shows that person B actually committed the offense. *See Brooks, 323 S.W.3d at 907*. He contends the video shows he did not commit the offense, and concludes that the State failed to prove each of the essential elements of assault on a public servant.

The State responds that two officers testified unequivocally that appellant kicked Bogacki. The officers' testimony was based on their presence and observations at the scene. The video, filmed from behind appellant, shows appellant "moving and struggling," but does not show his legs at the moment of the kick. The video was not conclusive **[*8]** support for either the officers' or appellant's version of events, and therefore the trial court was required to make its finding of guilt or innocence based on the credibility of the witnesses.

Although Appleton testified there was no kick, his opinions were based on the limited view of the video. And Appelton conceded that his expertise extended only to the technical aspects of the recordings, and did not include any scientific knowledge of human movement. His testimony about appellant's movements, or lack of movement, was "common sense" that any layperson including the trial judge would have. While the trial court could have accepted Appleton's interpretation of the video and pictures, and rejected the officers' testimony, it did not do so. The trial court was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See Brooks, 323 S.W.3d at 899*. **HN3** "[T]he evidence is not rendered insufficient simply because appellant presented a different version of the events." *Temple v. State, 390 S.W.3d 341, 363 (Tex. Crim. App. 2013)* (quoting *Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993))*; *see also Castilla v. State, 374 S.W.3d 537, 540 (Tex. App.—San Antonio 2012, pet. ref'd)* (distinguishing *Brooks* hypothetical where video evidence did not "conclusively disprove" but "merely called into question" eyewitness's credibility). We conclude there was legally sufficient **[*9]** evidence to support each element of the offense of assault on a public servant. *See Tex. Pen. Code Ann. §§ 22.01(a)(1)*; *22.01(b)(1)*. We overrule appellant's first issue.

Because of our conclusion that the evidence was legally sufficient to support appellant's conviction for assault on a public servant, we need not address his second issue that in the alternative he should be convicted of the lesser offense of resisting arrest. We affirm the trial court's judgment.

/s/ Michael J. O'Neill

MICHAEL J. O'NEILL

JUSTICE

Do Not Publish

*Tex. R. App. P. 47*

**JUDGMENT**

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of December, 2014.